*1101 OPINION.
TRammell :
The only question before us is whether the petitioner acquired the plates in January, 1920, or in October of that year. If the plates were acquired in January, 1920, the petitioner is entitled to depreciation on them from then until the close of its fiscal year, November 30, 1920, whereas if the plates were not acquired until October, 1920, the petitioner would be entitled to depreciation only from October to the end of the fiscal year.
The petitioner contends that the transaction which took place between its president and Cram in January, 1920, was a sale, by which it acquired the plates and not a contract of sale.
While the record does not show where the transaction in January, 1920, between the president of the petitioner and Cram took place, it indicates that some of the conferences held in the fall of 1919 were in Chicago. As there is nothing to indicate that any of the conferences were held elsewhere, or that the transaction took place elsewhere, we think it reasonable to conclude that it also took place in Chicago. Consequently the validity and interpretation of the transaction would be governed by the laws of Illinois.
Callaghan’s Illinois Statutes Annotated, vol. I, ch. 121 a, par. 4, sec. 1, provides as follows:
(1) A contract to sell goods is a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price.
(2) A sale of goods is an agreement whereby the seller transfers the property in goods to a buyer for a consideration called the price. (Italics ours.)
*1102 Paragraph 21, section 18 provides:
(1) Wliere there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.
(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.
While the evidence shows that in January, 1920, the president of the petitioner offered Cram $40,000 for the plates and Cram accepted the offer, it was September 7, 1920, before formal action with respect to the plates was taken by the board of directors of the petitioner. The action then taken was to authorize the president of the petitioner “ to negotiate the purchase ” of plates then “ owned by the George F. Cram Company ” and “ which should be owned by ” the petitioner. If the transaction in January, 1920, had been a sale by which the petitioner acquired the plates it is not clear why the board of directors in September should be authorizing the president of the petitioner to purchase plates then owned by the petitioner, neither is it clear why, if the plates were owned by the petitioner, the directors should refer to them as being owned by the George F. Cram Co. and state that they should be owned by the petitioner. Especially is this true since of the three directors present at the meeting, one was the president of the petitioner and one of the others had been informed early in the year as to what had transpired between the president of the petitioner and Cram. From the foregoing, we think it is clear that the directors of the petitioner did not consider that the petitioner was the owner of the plates at the time they adopted this resolution. No formal action with respect to the sale or disposition of the plates was taken by the George F. Cram Co. prior to October 18, 1920, when its board of directors authorized the sale of the plates to the petitioner and directed its president to deliver to the petitioner a bill of sale for them. Although the bill of sale does not show on what date in October it was executed, nor does the record show when it was delivered, we think it is reasonable to conclude that it was executed and delivered pursuant to the direction contained in the resolution of October 18, 1920, on that or some subsequent date in October, 1920. The bill of sale recites the sale and delivery of the plates to the petitioner and also vouches that the George F. Cram Co. was the true and lawful owner of them.
The petitioner relies on the fact that when an inventory was taken for the George F. Cram Co. in the summer of 1920, Cram directed that the plates here involved be omitted from the inventory. We do not think this is controlling, since there could be other reasons for omitting them than that they had been sold to the petitioner.
*1103 Considering all the facts in the case, we are unable to find that the transaction in January, 1920, was a sale. From the record we do not' think the George F. Cram Co. transferred or intended to transfer at that time to the petitioner the property in the plates. It is our opinion that the property in the plates was not transferred to the petitioner prior to the passage of the resolution on October 18, 1920, by the board of directors of the George F. Cram Co. authorizing the sale of the plates to the petitioner and the delivery of the bill of sale for them to the petitioner. Accordingly, we are of the opinion that the petitioner’s contention that it acquired the plates in January, 1920, must be denied and the action of the respondent approved.

Judgment will he entered for the respondent.